2.4    Advances.  If requested by the Manager, any Member may in such Member's sole and absolute discretion, and not as a requirement or obligation, advance funds to the Company. Any such advances shall not be considered contributions to the capital of the Company but shall be treated as loans thereto upon such other terms and conditions and such rate of interest, if any, as the Manager may determine.  Unless waived by the Member making such advances, such advances shall be repaid before any distribution is made to any Member pursuant to this Agreement.

## ARTICLE III

### Profits, Losses and Distributions

3.1    Net Profits and Net Losses.  The Members shall have the percentage interests in and to the Company (hereinafter individually referred to as a "Membership Interest" and collectively as the "Membership Interests") as set forth on Schedule A.

The profits and losses of the Company shall be determined each year in accordance with the accounting method followed for Federal income tax purposes and shall be allocated among the Members and credited (or charged) to their capital accounts in proportion to their Membership Interests.  Whenever a proportionate part of Company profit or loss is credited or charged to a Member's capital account, every item of income, gain, loss, deduction or credit entering into the computation of such profit or loss, or applicable to the period during which such profit or loss was realized, shall be credited or charged, as the case may be, to the Member's capital account in the same proportion.

3.2    Distributions.  After providing for the satisfaction of the current debts and obligations of the Company or to which any one or more of its properties are subject and after

-3-

providing a reasonable reserve for expenses expected to be incurred by the Company, funds derived from operations or otherwise may be distributed to the Members in accordance with their Membership Interests, at such times and in such amounts as the Manager shall determine in its sole discretion.

### ARTICLE IV

### Conduct of the Business

4.1    Management.

(a)    Except as otherwise specifically provided in this Agreement, the Company and its business operations shall be managed solely by the Manager and the conduct of the Company's business shall be controlled and conducted solely by the Manager in accordance with this Agreement.

(b)    The Manager shall have the right, in the name of the Company, to do all such acts as may be advisable or appropriate, in the judgment of the Manager, to carry on the activities of the Company and to further the purpose of the Company.  The powers of the Manager shall include (but not be limited to) the power to:

(i)    Acquire, develop, improve, alter, maintain, operate, manage, mortgage, sublease, rent, sell or exchange or otherwise deal in and with any property or asset of the Company, upon such terms as the Manager may deem advisable;

(ii)    To borrow on behalf of the Company and mortgage any property or asset of the Company, and subordinate the interest of the Company in any asset to the interest of a creditor;

-4-

(iii)    Use the Company name, credit or any of its assets for the transaction of Company business;

(iv)    Endorse or accept in the Company name any note, bill, draft or check; and

(v)    Do any act which is reasonably within the scope of the business and purpose of the Company.

In order to conduct any other transaction which is beyond the scope of the powers hereinabove granted to the Manager, the written consent of Members owning two-thirds (2/3rds) of the Membership Interests shall be required.

(c)    A person dealing with the Company shall not be required to inquire into the authority of the Manager to take any action or make any decisions hereunder.

(d)    The Manager shall be The Durst Organization Inc.

A vacancy created in the Manager shall be filled by a vote of Members having a majority in interest.  A person serving as a Manager (and/or his designee as described in the succeeding paragraph) may be removed at any time from such office by a vote of Members having a majority in interest.

A Manager may designate another person who need not be a Member to act for him as a Manager.  Such designation, and the extent thereof, shall be specified in a written power of attorney signed by such Manager and filed with the Company.  Such designee shall have all the rights and powers of such Manager except as limited in the power of attorney and except as

-5-

prohibited by law.  However, such designee shall not be entitled to receive a salary from the Company or to share in the income and/or assets of the Company (except in his capacity as a Member hereunder, should he be one).

If there is no Manager, the authority and power to manage the business of the Company shall be exercised by all of the Members.

(e)    No Member or Members shall have the authority, without the written consent to or ratification of the specific act by two-thirds (2/3rds) of the Membership Interests, to do any of the acts described in Section 4.1 (b) or any of the following:

(f)    Confess a judgment against the Company;

(i)    Admit any person as an additional Member in the Company;

(ii)    Do any act in contravention of this Agreement;

(iii)    Alter the primary purpose of the Company or voluntarily elect to dissolve the Company; or

(iv)    Do any act which would make it impossible to carry on the ordinary business of the Company (except pursuant to a liquidation upon dissolution of the Company under Article VII hereof).

4.2    Salaries.  No Member, including a Manager, shall be entitled to receive a salary or other compensation for services rendered to the Company.

1043559v1
SSL-DOCS1 1043559v2

4.3    Exculpation.  The Manager shall use ordinary care and reasonable diligence in the management of the Company business, but shall not be liable for any mistake of judgment made in good faith or for losses or liabilities incurred as a result of such mistakes, or as the result of negligence, dishonesty or bad faith of any employee, broker, attorney-in-fact or other agent of the Company, provided that such employee, broker, attorney-in-fact or other agent was selected, engaged or retained by the Manager with reasonable care and was properly supervised.  The Manager may consult with legal counsel selected by him and any action or omission suffered or taken by him in good faith in reliance upon and in accordance with the opinion or advice of such counsel shall be full justification for any such action or omission, and he shall be fully protected in so acting or omitting to act, provided such counsel was selected with reasonable care.

4.4    Indemnity.  The Company agrees to indemnify and hold harmless the Manager in respect of any and all costs, expenses, damages and claims and personal liability (including judgments, fines, amounts paid in settlement and reasonable expenses, including attorneys' fees) which may be incurred by him as a result of any action taken or omitted to be taken by such Member within the scope of this Agreement, unless such action or omission was the result of gross negligence or willful misconduct.

4.5    Registration of Properties.  All real estate and other property owned by the Company shall be held in the name of the Company or such other person or entity as may be agreed to by the Manager.

## ARTICLE V

### Admission and Withdrawal of Members;
### Assignability of Membership Interests

5.1    Admission and Withdrawal of Members.  Except as provided in Section 4.1(e), no additional Members may be admitted to, and no Member may voluntarily withdraw from, the Company.

5.2    Assignment and Substitution.

(a)    No Member shall, directly or indirectly, sell, assign, transfer, mortgage, hypothecate, pledge, encumber, gift, create a security interest in or lien upon, or otherwise dispose of (hereinafter "transfer") all or any part of the Membership Interest of such Member or any rights with respect thereto (including the right to receive distributions), whether by operation of law or otherwise, except as provided in paragraphs (b) and (c) of this Section.

(b)    A Member may transfer all or any part of his or her Membership Interest or any rights with respect thereto with the written consent of the Manager which consent may be given or withheld in the complete discretion of the Manager.  A permitted transferee of all or a part of a Member's Membership Interest as a result of the foregoing will be substituted as a Member only with the written consent of the Manager and only if such transferee agrees in writing to all the terms and conditions of this Agreement.

(c)    Each Member may, without the approval of the Manager or any of the Members, transfer all or any part of his Membership Interest by Will, by descent as a result of intestacy, by the terms of a trust instrument, by exercise of a power of appointment, or by sale, assignment, gift or other disposition to (1) one or more members of the Durst family (as defined

-8-

in Section 5.2 (e)), or (2) a trust or trusts of which one or more members of the Durst family (as

defined in Section 5.2 (e)) and/or a spouse of a member of the Durst family (as defined in

Section 5.2(e)) are the sole beneficiaries, provided that (i) from the inception of the trust and

continuously thereafter at least fifty percent (50%) of the trustees of such trust are the Member or

members of the Durst family (as defined in Section 5.2 (e)) and (ii) any subsequent beneficiary,

remainderman or other transferee of or under such trust, whether by Will, laws of intestacy, the

terms of the trust agreement, exercise of a power of appointment, gift, sale or otherwise, must be

a member of the Durst family (as defined in Section 5.2(e)) or another trust that meets the

requirements of this clause (2), and the trust instrument or Will must so specify.  Any permitted

transferee receiving all or any part of the Member's Membership Interest as a result of the

foregoing shall be substituted as a Member, subject to all of the terms and conditions of this

Agreement.

> (d)    (1)    If all or any portion of a Member's Membership Interest is

transferred by operation of law or otherwise to a person other than a permitted transferee

pursuant to clauses (b) or (c) of this Section, including a transfer to the committee, guardian or

conservator of an incapacitated Member if such committee, guardian or conservator includes a

person who is not a member of the Durst family (as defined in Section 5.2 (e)) or to a trustee in

bankruptcy of a Member, then in addition to all other remedies available to the Company,

including the right to declare such transfer null and void, the Company, or its designee, shall

have the right at its option to purchase all or a portion of the Membership Interest so transferred

(the "Transferred Interest") at its appraised fair market value and on the terms as determined in

accordance with the succeeding paragraph.  The Company shall have one year from the date it

receives written notice of such transfer to exercise such option.

(2)    The Manager shall appoint an appraiser knowledgeable in real estate matters to determine the fair market value of the Transferred Interest.  Within thirty days of his selection, the appraiser shall deliver to the Manager his appraisal setting forth such fair market value.  In making the appraisal, the appraiser shall take into account discounts for a minority interest and for lack of marketability.  The transferring Member and/or the non-permitted transferee shall be required to sell the Transferred Interest at the appraised fair market value as so determined by such appraisal.  Such purchase price shall be paid in cash over such period of time (not to exceed twenty years from the date of the closing) as the Manager shall determine and with interest on the deferred balance at the appropriate Applicable Federal Rate as determined pursuant to Section 1274(d) of the Internal Revenue Code.  The closing shall occur not later than thirty days following the submission of the appraisal, such date to be selected by the Manager.

(e)    For purposes of the Agreement, a member of the Durst family means a lineal descendent of Joseph Durst.

(f)    Upon the admission of a Member pursuant to either paragraph (b) or (c) of this Section, the Member shall deliver to the Company such instruments and other documentation required by the Manager and pay such costs and fees, including but not limited to attorneys and accountants fees, as may be incurred by the Manager in connection with such admission

-10-

## ARTICLE VI

### Dissolution and Termination

6.1     Dissolution.  Subject to the provisions of Section 6.2, the Company shall be dissolved upon the earliest of the occurrence of any of the following events:

(a)     December 31, 2060;

(b)     The written consent of two-thirds (2/3rds) of the Members;

(c)     The sale, other disposition, or discontinuance of all or substantially all of the business and/or assets of the Company; or

(d)     The happening of any other event causing the dissolution of the Company under the laws of the State of New York.

6.2     Right to Continue.  In the event of the dissolution of the Company pursuant to subsection 6.1(d), Members owning more than 50% of the Membership Interests may elect to continue the business of the Company.  This Agreement shall continue to be binding upon all of such Members until such time as a new Operating Agreement is executed by all of such Members.

6.3     Winding Up and Termination.

(a)     Upon dissolution of the Company as provided in Section 6.1 and in the absence of the exercise of the option to continue the business of the Company as provided in Section 6.2, the affairs of the Company shall be wound up by the Manager and its assets liquidated in a manner deemed by the Manager most beneficial to the Company.  The Company

-11-

shall terminate only after its affairs have been wound up and assets distributed in liquidation as herein provided.  Pending termination of the Company, this Agreement shall continue to govern the affairs of the Company and the Members shall continue to share net profits and net losses during the period of liquidation in the same proportions as before dissolution.

      (b)     The proceeds, if any, from any liquidation of the assets of the Company shall be applied and distributed in the following order of priority:

        (i)     to the payment of all liabilities owing to creditors other than Members;

        (ii)     to the establishment of such reserves as the Manager may deem reasonably necessary to provide for contingent or unforeseen liabilities or obligations of the Company;

        (iii)     to the payment of all liabilities owing to Members;

        (iv)     to the Members in proportion to their Membership Interests.

        (v)     No Member shall have any right to demand property other than cash upon dissolution and termination of the Company.  If any assets of the Company are to be distributed in kind, such assets shall be distributed on the basis of the fair market value thereof and, if such assets be real property, any Member entitled to any interest in such property shall receive his interest therein as a tenant-in-common with all other Members so entitled.

-12-

(vi)   Within a reasonable time following completion of the liquidation of the Company's properties, the regular accountants of the Company shall furnish to each Member a statement (which need not be audited) setting forth the assets and liabilities of the Company as of the date of complete liquidation.

(c)   Upon completion of the liquidation of the Company and the distribution of all Company funds, the Company shall terminate.

ARTICLE VII

Books and Records and Accounting

7.1   Books and Records.  The Company shall maintain proper and complete records and books of account in which shall be entered all transactions relating to the Company's business.  Such books shall be kept on such method of accounting as the Manager shall determine.  All such books and records, subject to the following three sentences, shall be open to inspection, examination, and copying by a Member or his duly authorized representatives at his own expense on reasonable notice during regular business hours no more than once in any calendar year.  No member shall be entitled to inspect, examine or copy the books and records of the Company (other than those records which are specifically identified in Section 1102 of the New York Limited Liability Company Law) unless the Member demonstrates to the satisfaction of the Manager that such inspection and copying is just and reasonable.  In no event shall the Company disclose to a Member, unless otherwise required by law, any information which the Manager reasonably believes to be in the nature of trade secrets or other information the disclosure of which the Manager in good faith believes is not in the best interest of the Company or its business or which the Company is required by law or by agreement with a third party to

-13-

keep confidential. A Member may not inspect, examine or copy any information contained in the books and records of the Company without first entering into an agreement satisfactory to the Manager assuring that such disclosed information will remain confidential and will not be used for any purpose adverse to the Company or the other Members or any of their interests.

7.2     Bank Accounts.  All funds of the Company shall be deposited in the name of the Company in such banking account or accounts as shall be designated by the Manager.  All withdrawals of Company funds from such banking account or accounts shall be made only for Company purposes and upon the signature of such person or persons as may from time to time in writing be designated by the Manager.

7.3     Fiscal Year and Accountants.  The fiscal year of the Company shall be the calendar year unless the Manager shall otherwise determine.  The regular accountants of the Company shall be such independent firm of certified public accountants as the Manager may from time to time designate.

7.4     Accounting Decisions.  All decisions as to accounting principles, except as specifically provided to the contrary herein, shall be made by the Manager, as long as the decisions follow generally accepted accounting principles.

7.5     Federal Income Tax Elections.  All elections required or permitted to be made by the Company under the Internal Revenue Code shall be made by the Manager in its sole discretion.

-14-

## ARTICLE VIII

### Miscellaneous

8.1    <u>General</u>.  This Agreement:  (a) shall be binding upon, and shall inure to the benefit of, the parties hereto, their successors and permitted assigns; (b) shall be governed by and construed in accordance with, the laws of the State of New York; (c) contains the entire agreement between the parties and supersedes any prior understandings and agreements among them pertaining to the subject matter hereof; and (d) may be executed in several counterparts with the same effect as if the parties executing the several counterparts had all executed one counterpart as of the day and year first above written; provided that the several counterparts, in the aggregate, shall have been signed by all of the parties hereto.

8.2    <u>Notices</u>.  Any notice or other communication given pursuant to this Agreement shall be in writing and shall be deemed to have been duly given if personally delivered, upon delivery, or if mailed, upon deposit with the U.S. Postal Service by registered or certified mail, return receipt requested, addressed to each Member at the address of such Member shown on the books of the Company or to such changed address as

to which any Member may give written notice to the others in accordance with the provisions hereof; provided, however, that a copy of any notice given by one Member to another Member shall concurrently therewith be given to the remaining Members.

8.3    <u>Captions, Variation in Pronouns, and Severability</u>.  The headings in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation hereof.  Throughout this Agreement wherever from the context it appears appropriate, the masculine, feminine, or neuter gender shall be deemed to include all other

-15-

genders, and the singular or the plural shall be deemed to include the singular and the plural.  If any provision of this Agreement shall be held invalid, the remainder of this Agreement shall not be affected thereby.

8.4     Waiver and Amendment.  No waiver, modification, or amendment of this Agreement shall be valid or effective unless in writing and signed by the Members then holding two-thirds (2/3rds) of the Membership Interests, and no waiver of any breach or condition of this Agreement shall be deemed to be a waiver of any other subsequent breach or condition, whether of like or different nature.

8.5     Partition.  Each Member hereby irrevocably waives any right that such Member may have to maintain any action for partition with respect to any property of the Company.

8.6     Further Assurances.  Each of the parties hereto agrees that he will make, execute and acknowledge such instruments, documents and certificates as from time to time may be required by law or may otherwise be necessary or convenient to effectuate the provisions of this Agreement and that if any action shall be taken pursuant to this Agreement by the required percentage of all or any of the Members or by the Manager when authorized hereunder, even though such party may not have assented thereto, or may have objected thereto, he will nevertheless execute any such writing or instrument as may be necessary to carry out and perfect such action, including any instrument effecting or evidencing the admission or withdrawal of a Member and any amendment or supplement to this agreement.

8.7     Power of Attorney.  (a)  Each Member hereby irrevocably constitutes and appoints the Manager in his or her absolute discretion and with full power to act, his true and

-16-

lawful attorney, in his name, place and stead, to make, execute, consent to, swear to, acknowledge, record and file:

(i)     any certificate or other instrument which may be required to be filed by the Company or the Members under the laws of the State of New York or under the applicable laws of any other jurisdiction to the extent that the Manager deems such filing to be necessary or desirable;

(ii)    any and all amendments or modifications of instruments described in the preceding subsection (a) (i); and

(iii)   all such other instruments as the Manager may deem necessary or desirable fully to carry out the provisions of this Agreement in accordance with its terms;

and each Member hereby irrevocably constitutes and appoints the Manager his true and lawful attorney, in his name, place and stead, to take any and all such other action as the Manager may deem necessary or desirable fully to carry out the provisions of this Agreement in accordance with its terms.

(b)    The foregoing Power of Attorney is coupled with an interest and shall continue in full force and effect notwithstanding the subsequent death or incapacity of any Member or the assignment by a Member of his or her Membership Interest.

1043559v1
SSL-DOCS1 1043559v2

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

_____
Douglas Durst, as Trustee of
Trusts Described in Schedule A

_____
Jonathan Durst, As Trustee of
Trusts described in Schedule A

_____
Richard Siegler, As Trustee of
Trusts described in Schedule A

_____
Mark A. Levy as Trustee of
Trust described in Schedule A

Appointment as Manager accepted:

The Durst Organization Inc.

By:_____
      Douglas Durst, President

-18-

1043559v1
SSL-DOCS1 1043559v2

## SCHEDULE A

| Member | Initial Capital Contribution | Membership Interest |
|---|---|---|
| Douglas Durst, Jonathan Durst, and Richard Siegler, as Trustees U/A December 31, 1962 with Alma D. Askin as Grantor F/B/O Peter Askin | $1,000 | 7.14286% |
| Douglas Durst, Jonathan Durst, and Richard Siegler, as Trustees U/A December 31, 1962 with Alma D. Askin as Grantor F/B/O Nan Rothschild | $1,000 | 7.14286 |
| Douglas Durst, Jonathan Durst and Richard Siegler, as Trustees U/A December 31, 1962 with Royal H. Durst as Grantor F/B/O Leslie B. Durst | $1,000 | 7.14286 |
| Douglas Durst, Jonathan Durst and Richard Siegler, as Trustees U/A December 31, 1962 with Royal H. Durst as Grantor F/B/O Peter D. Durst | $1,000 | 7.14286 |
| Douglas Durst, Jonathan Durst and Richard Siegler, as Trustees U/A December 31, 1962 with Royal H. Durst as Grantor F/B/O Stephen M. Durst | $1,000 | 7.14286 |
| Douglas Durst, Jonathan Durst, and Richard Siegler, as Trustees U/A December 31, 1962 with Seymour B. Durst as Grantor F/B/O Thomas G. Durst | $1,000 | 7.14286 |

| Member | Initial Capital Contribution | Membership Interest |
|---|---|---|
| Douglas Durst, Jonathan Durst, and Richard Siegler, as Trustees U/A December 31, 1962 with Seymour B. Durst as Grantor F/B/O Wendy Kreeger | $1,000 | 7.14286 |
| Douglas Durst and Richard Siegler, as Trustees U/A December 31, 1962 with Seymour B. Durst as Grantor F/B/O Douglas Durst | $1,000 | 7.14286 |
| Douglas Durst, Jonathan Durst, and Richard Siegler, as Trustees U/A December 31, 1962 with Seymour B. Durst as Grantor F/B/O Robert Durst | $1,000 | 7.14286 |
| Douglas Durst, Jonathan Durst, and Richard Siegler, as Trustees U/A December 31, 1962 with David Durst as Grantor F/B/O Laurel Ann Durst | $1,000 | 7.14286 |
| Douglas Durst, Jonathan Durst and Richard Siegler, as Trustees U/A December 31, 1962 with David Durst as Grantor F/B/O Jonathan Denis Durst | $1,000 | 7.14286 |
| Douglas Durst, Jonathan Durst, and Richard Siegler, as Trustees U/A December 31, 1962 with David Durst as Grantor F/B/O Robin Paula Durst | $1,000 | 7.14286 |
| Douglas Durst, Jonathan Durst, | $1,000 | 7.14286 |

|  | Initial Capital Contribution | Membership Interest |
|---|---|---|
| Member and Richard Siegler, as Trustees U/A December 31, 1962 with David Durst as Grantor F/B/O Joshua Lowell Durst | | |
| Douglas Durst and Mark A. Levy as Trustees U/A August 22, 1978 with David Durst as Grantor F/B/O Kristoffer R. Durst | $1,000 | 7.14286 |

Exhibit E

# OPERATING AGREEMENT

## OF

## DURST DEVELOPMENT L.L.C.

OPERATING AGREEMENT made as of the 11th day of June, 1998, as amended as of July 1, 1999 and as of January 1, 2001, as amended and restated on October 15, 2001, and as amended and restated as of this 11th day of November, 2003, by and among the persons listed on Exhibit A attached hereto (each of whom is hereinafter referred to individually as a "Member" and collectively as the "Members"), and THE DURST ORGANIZATION INC. as the Manager (hereinafter, the "Manager").

WHEREAS, this Agreement is being amended to reflect the transfer by the Trust dated 6/10/99 FBO Dena Rosenberg, Janna Rosenberg and Adam Rosenberg to The Gary & Denise Rosenberg 2003 Family Trust (the "Rosenberg Trust"), and to correctly state the nature and amount of the Rosenberg Trust's interest;

NOW THEREFORE, in consideration of the promises and mutual agreements contained herein, the parties agree as follows:

## ARTICLE I

### Formation, Name, Purpose, Place of Business, and Term

1.1    Formation.  The parties hereto hereby form a limited liability company (hereinafter called the "Company") in accordance with and pursuant to the provisions of the Limited Liability Company Law of the State of New York, which Company shall be governed by and operated pursuant to the terms and provisions of this Operating Agreement.

1.2     Name.  The name of the Company shall be DURST DEVELOPMENT L.L.C.

1.3     Purpose.  The principal purpose of the Company shall be to invest in, lease, acquire, develop, improve, alter, maintain, operate, manage, sublease, finance, mortgage or otherwise generally deal in real and personal property, and to engage in any and all other activities related or incidental thereto.  The Company may also engage in any and all other business activities as the Members may determine.

1.4     Principal Place of Business.  The principal place of business of the Company shall be located at 1155 Avenue of the Americas, New York, New York 10036, or such other place or places as the Members may from time to time designate.

1.5     Term.  The term of the Company shall commence upon the date hereof and shall continue until December 31, 2048, unless sooner terminated as provided in Article VII of this Agreement.

## ARTICLE II

### Capital Contributions and Advances

2.1     Capital Contributions.  The initial capital contributions by the Members to the Company shall be as set forth on Schedule A.  The Members shall make further capital contributions to the Company in such amounts and in such form and at such times as the Members shall determine.  Unless otherwise so determined, any such capital contributions shall be made by the Members in proportion to their respective Membership Interests (as defined in Section 3.1 hereof).

2.2    Capital Accounts.  A separate capital account shall be maintained for each Member.  No Member may withdraw any part of his capital contribution except with the written consent of the Manager, and no Member shall be entitled to receive any distribution from the Company except as provided in Sections 3.2 and 6.3(b) hereof.

2.3    Interest on Capital.  No interest shall be paid on any capital contributed to the Company.

2.4    Advances.  If requested by the Manager, any Member may in such Member's sole and absolute discretion, and not as a requirement or obligation, advance funds to the Company.  Any such advances shall not be considered contributions to the capital of the Company but shall be treated as loans thereto upon such other terms and conditions and such rate of interest, if any, as the Manager may determine.  Unless waived by the Member making such advances, such advances shall be repaid before any distribution is made to any Member pursuant to this Agreement.

## ARTICLE III

### Membership Interests
### Profits, Losses and Distributions

3.1    Membership Interests.  The Members shall have the percentage interests in and to the Company (hereinafter individually referred to as a "Membership Interest" and collectively as the "Membership Interests") as set forth on Schedule A.

-3-

3.2     Distributions.

(a)     The Manager shall distribute Net Cash Flow (as defined in Section 3.2(c) below) to the Members at such times and in such amounts as the Manager shall determine, *pro rata* in accordance with their Membership Interests.

(b)     The Manager shall distribute Net Proceeds (as defined in Section 3.2(d) below) as soon as practicable following receipt thereof in the following order of priority:

(i)     first, to the Members other than the Rosenberg Trust, *pro rata* in proportion to and to the extent of the respective amounts of their unreturned capital contributions, until the unreturned capital contributions of such Members are reduced to zero;

(ii)     second, to the Rosenberg Trust to the extent of its unreturned capital contributions, if any, until its unreturned capital contributions are reduced to zero; and

(iii)     the balance, if any, shall be distributed *pro rata* in accordance with the Member's Membership Interests.

(c)     The term "Net Cash Flow" means gross revenue less all cash and accrued expenses of the Company, including, without limitation, (i) debt service on Company loans, including, without limitation, the repayment of any and all Members Loans together with any and all interest due thereon, (ii) rents payable under any lease whereunder the Company is the lessee, (iii) taxes, (iv) management fees, commissions, and legal fees incurred in the

-4-

connection with the operation of the Company, (v) any and all expenses incurred in the operation of Company property and (vi) reasonable reserves established by the Manager from time-to-time for working capital and other Company purposes.

(d)   The term "Net Proceeds" mean the net proceeds available to the Company from a Capital Transaction after deducting (i) all out-of-pocket costs and expenses incurred in connection therewith, (ii) any mortgages, liens or other indebtedness which is satisfied or refinanced as a result of such Capital Transaction and (iii) reasonable reserves established by the Manager for working capital and other Company purposes.

(e)   The term "Capital Transaction" means financing, refinancing, sale, exchange or other disposition of all or part of the Company's interest in the Property, including, without limitation, casualty or condemnation or other similar transactions which, in accordance with generally accepted accounting principles, are treated as a capital transaction.

3.3   <u>Net Profits and Net Losses</u>.

(a)   Net Profit(s) or Net Loss(es), as the case may be, shall mean, for any fiscal year of the Company, the net profit or net loss of the Company determined for Federal income tax purposes (but excluding any Gain or Loss from a Capital Transaction), including as an item of income or gain any such item which is earned by the Company during such year and is exempt from Federal income tax, and deducting the amount of any expenditures incurred by the Company during such fiscal year that are described in Section 705(a)(2)(B) of the Code or the corresponding provisions of any subsequent law.  Gain or Loss from a Capital Transaction means the gain or loss recognized by the Company attributable to a Capital Transaction

determined in accordance with the method of accounting used by the Company for Federal Income tax purposes.

(b)     Except as otherwise provided herein, Net Profits and Gain from a Capital Transaction for any fiscal year shall be allocated in the following order and priority:

(i)     First, to the Members in proportion to and to the extent of the excess, if any, of (i) the cumulative Net Losses and Losses from a Capital Transaction allocated to the Members pursuant to Section 3.3(c)(iv), over (ii) the cumulative Net Profits and Gain from a Capital Transaction allocated to them pursuant to this Section 3.3(b)(i) for all prior fiscal years;

(ii)     Second, to the Rosenberg Trust to the extent of the excess, if any, of the cumulative Net Losses and Losses from a Capital Transaction allocated to it pursuant to Section 3.3(c)(iii) for all prior fiscal years over the cumulative Net Profits and Gain from a Capital Transaction allocated pursuant to this Section 3.3(b)(ii) for all prior fiscal years;

(iii)     Third, to the Members other than the Rosenberg Trust in proportion to and to the extent of the excess, if any, of the cumulative Net Losses and Losses from a Capital Transaction allocated to them pursuant to Section 3.3(c)(ii) for all prior fiscal years over the cumulative Net Profits and Gain from a

Capital Transaction allocated pursuant to this Section 3.3(b)(iii) for all prior fiscal years; and

        (iv)    The balance, if any, to the Members in proportion to their Membership Interests.

        (c)    Except as otherwise provided herein, Net Losses and Losses from a Capital Transaction for any fiscal year shall be allocated in the following order and priority:

        (i)    First, to the Members in proportion to and to the extent of the excess, if any, of (i) the cumulative Net Profits and Gain from a Capital Transaction allocated to them pursuant to Section 3.3(b)(iv) for all prior fiscal years, over (ii) the sum of (A) the cumulative Net Losses and Losses from a Capital Transaction allocated to them pursuant to this Section 3.3(c)(i) for all prior fiscal years and (B) all prior distributions to them pursuant to Section 3.2(a) and 3.2(b)(iii).

        (ii)    Second, to the Members other than the Rosenberg Trust in proportion to and to the extent of their unreturned capital contributions;

        (iii)    Third, to the Rosenberg Trust to the extent of its unreturned capital contributions; and

        (iv)    The balance, if any, to the Members in proportion to their Membership Interests.

-7-

3.4     Notwithstanding the preceding provisions of this Article 3:

(a)     The relevant provisions of Treasury Regulations Section 1.704 shall apply.

(b)     Nonrecourse Deductions (as defined in Treasury Regulation Section 1.704-2(b)(1)), if any, shall be allocated to the Members *pro rata* in proportion to their Membership Interests.

(c)     Except where otherwise specifically indicated, all allocations pursuant to this Article 3 shall be made after the Members' Capital Accounts have been adjusted for all current period distributions.

(d)     If the Company shall realize, upon a Capital Transaction, gain which is treated as ordinary income under Section 1245 or 1250 of the Internal Revenue Code, such ordinary income shall be allocated to the Members who received the allocation of the depreciation or cost recovery deduction that generated the ordinary income, which amount of ordinary income shall be allocated in the same proportions as such deductions.

## ARTICLE IV

### Conduct of the Business

4.1     Management.

(a)     Except as otherwise specifically provided in this Agreement, the Company and its business operations shall be managed solely by the Manager and the conduct of the Company's business shall be controlled and conducted solely by the Manager in accordance with this Agreement.

-8-

(b)     The Manager shall have the right, in the name of the Company, to do all such acts as may be advisable or appropriate, in the judgment of the Manager, to carry on the activities of the Company and to further the purpose of the Company.  The powers of the Manager shall include (but not be limited to) the power to:

(i)     Acquire, develop, improve, alter, maintain, operate, manage, mortgage, sublease, rent, sell or exchange or otherwise deal in and with any property or asset of the Company, upon such terms as the Manager may deem advisable;

(ii)     To borrow on behalf of the Company and mortgage any property or asset of the Company, and subordinate the interest of the Company in any asset to the interest of a creditor;

(iii)     Use the Company name, credit or any of its assets for the transaction of Company business;

(iv)     Endorse or accept in the Company name any note, bill, draft or check; and

(v)     Do any act which is reasonably within the scope of the business and purpose of the Company.

In order to conduct any other transaction which is beyond the scope of the powers hereinabove granted to the Manager, the written consent of Members owning two-thirds (2/3rds) of the Membership Interests shall be required.

-9-

(c)     A person dealing with the Company shall not be required to inquire into the authority of the Manager to take any action or make any decisions hereunder.

(d)     The Manager shall be The Durst Organization Inc.

A vacancy created in the Manager shall be filled by a vote of Members having a majority in interest.  A person serving as a Manager (and/or his designee as described in the succeeding paragraph) may be removed at any time from such office by a vote of Members having a majority in interest.

A Manager may designate another person who need not be a Member to act for him as a Manager.  Such designation, and the extent thereof, shall be specified in a written power of attorney signed by such Manager and filed with the Company.  Such designee shall have all the rights and powers of such Manager except as limited in the power of attorney and except as prohibited by law.  However, such designee shall not be entitled to receive a salary from the Company or to share in the income and/or assets of the Company (except in his capacity as a Member hereunder, should he be one).

If there is no Manager, the authority and power to manage the business of the Company shall be exercised by all of the Members.

(e)     No Member or Members shall have the authority, without the written consent to or ratification of the specific act by two-thirds (2/3rds) of the Membership Interests, to do any of the acts described in Section 4.1 (b) or any of the following:

(i)     Confess a judgment against the Company;

-10-

SSL-DOCS1 791121v4

(ii)     Admit any person as an additional Member in the Company;

(iii)     Do any act in contravention of this Agreement;

(iv)     Alter the primary purpose of the Company or voluntarily elect to dissolve the Company; or

(v)     Do any act which would make it impossible to carry on the ordinary business of the Company (except pursuant to a liquidation upon dissolution of the Company under Article VII hereof).

4.2    Salaries.  No Member, including a Manager, shall be entitled to receive a salary or other compensation for services rendered to the Company.

4.3    Exculpation.  The Manager shall use ordinary care and reasonable diligence in the management of the Company business, but shall not be liable for any mistake of judgment made in good faith or for losses or liabilities incurred as a result of such mistakes, or as the result of negligence, dishonesty or bad faith of any employee, broker, attorney-in-fact or other agent of the Company, provided that such employee, broker, attorney-in-fact or other agent was selected, engaged or retained by the Manager with reasonable care and was properly supervised.  The Manager may consult with legal counsel selected by him and any action or omission suffered or taken by him in good faith in reliance upon and in accordance with the opinion or advice of such counsel shall be full justification for any such action or omission, and

-11-

he shall be fully protected in so acting or omitting to act, provided such counsel was selected with reasonable care.

4.4    Indemnity.  The Company agrees to indemnify and hold harmless the Manager in respect of any and all costs, expenses, damages and claims and personal liability (including judgments, fines, amounts paid in settlement and reasonable expenses, including attorneys' fees) which may be incurred by him as a result of any action taken or omitted to be taken by such Member within the scope of this Agreement, unless such action or omission was the result of gross negligence or willful misconduct.

4.5    Registration of Properties.  All real estate and other property owned by the Company shall be held in the name of the Company or such other person or entity as may be agreed to by the Manager.

## ARTICLE V

### Admission and Withdrawal of Members; Assignability of Membership Interests

5.1    Admission and Withdrawal of Members.  Except as provided in Section 4.1(e), no additional Members may be admitted to, and no Member may voluntarily withdraw from, the Company.

5.2    Assignment and Substitution.

(a)    No Member shall, directly or indirectly, sell, assign, transfer, mortgage, hypothecate, pledge, encumber, gift, create a security interest in or lien upon, or otherwise dispose of (hereinafter "transfer") all or any part of the Membership Interest of such

-12-

Member or any rights with respect thereto (including the right to receive distributions), whether by operation of law or otherwise, except as provided in paragraphs (b) and (c) of this Section.

(b)    A Member may transfer all or any part of his or her Membership Interest or any rights with respect thereto with the written consent of the Manager which consent may be given or withheld in the complete discretion of the Manager.  A permitted transferee of all or a part of a Member's Membership Interest as a result of the foregoing will be substituted as a Member only with the written consent of the Manager and only if such transferee agrees in writing to all the terms and conditions of this Agreement.

(c)    Each Member may, without the approval of the Manager or any of the Members, transfer all or any part of his Membership Interest by Will, by descent as a result of intestacy, by the terms of a trust instrument, by exercise of a power of appointment, or by sale, assignment, gift or other disposition to (1) one or more members of the Durst family (as defined in Section 5.2 (f)), or (2) a trust or trusts of which one or more members of the Durst family (as defined in Section 5.2 (f)) and/or a spouse of a member of the Durst family (as defined in Section 5.2(f)) are the sole beneficiaries, provided that (i) from the inception of the trust and continuously thereafter at least fifty percent (50%) of the trustees of such trust are the Member or members of the Durst family (as defined in Section 5.2 (f)) and (ii) any subsequent beneficiary, remainderman or other transferee of or under such trust, whether by Will, laws of intestacy, the terms of the trust agreement, exercise of a power of appointment, gift, sale or otherwise, must be a member of the Durst family (as defined in Section 5.2(f)) or another trust that meets the requirements of this clause (2), and the trust instrument or Will must so specify.  Any permitted transferee receiving all or any part of the Member's Membership Interest as a result of the

-13-

foregoing shall be substituted as a Member, subject to all of the terms and conditions of this Agreement.

(d)     Subject to the provisions of Section 8 hereof, the Rosenberg Trust may, without the approval of the Manager or any of the Members, transfer all or any part of its Membership Interest to the spouse or children of Gary Rosenberg, who shall be permitted transferees provided that each such transferee agrees in writing to all the terms and conditions of this Agreement.

(e)     (1)     If all or any portion of a Member's Membership Interest is transferred by operation of law or otherwise to a person other than a permitted transferee pursuant to clauses (b), (c) or (d) of this Section, including a transfer to the committee, guardian or conservator of an incapacitated Member or to a trustee in bankruptcy of a Member, then in addition to all other remedies available to the Company, including the right to declare such transfer null and void, the Company, or its designee, shall have the right at its option to purchase all or a portion of the Membership Interest so transferred (the "Transferred Interest") at its appraised fair market value and on the terms as determined in accordance with the succeeding paragraph. The Company shall have one year from the date it receives written notice of such transfer to exercise such option.

(2)     The Manager shall appoint an appraiser knowledgeable in real estate matters to determine the fair market value of the Transferred Interest. Within thirty days of his selection, the appraiser shall deliver to the Manager his appraisal setting forth such fair market value. In making the appraisal, the appraiser shall take into account discounts for a minority interest and for lack of marketability. The transferring Member and/or the non-

-14-

permitted transferee shall be required to sell the Transferred Interest at the appraised fair market value as so determined by such appraisal. Such purchase price shall be paid in cash over such period of time (not to exceed twenty years from the date of the closing) as the Manager shall determine and with interest on the deferred balance at the appropriate Applicable Federal Rate as determined pursuant to Section 1274(d) of the Internal Revenue Code. The closing shall occur not later than thirty days following the submission of the appraisal, such date to be selected by the Manager.

(f)    For purposes of the Agreement, a member of the Durst family means a lineal descendent of Joseph Durst.

(g)    Upon the admission of a Member pursuant to either paragraph (b), (c) or (d) of this Section, the Member shall deliver to the Company such instruments and other documentation required by the Manager and pay such costs and fees, including but not limited to attorneys and accountants fees, as may be incurred by the Manager in connection with such admission.

## ARTICLE VI

### Dissolution and Termination

6.1    Dissolution.  Subject to the provisions of Section 6.2, the Company shall be dissolved upon the earliest of the occurrence of any of the following events:

(a)    December 31, 2048;

(b)    The written consent of two-thirds (2/3rds) of the Members;

(c)     The sale, other disposition, or discontinuance of all or substantially all of the business and/or assets of the Company; or

(d)     The happening of any other event causing the dissolution of the Company under the laws of the State of New York.

6.2     <u>Right to Continue</u>.  In the event of the dissolution of the Company pursuant to subsection 6.1(d), the Members may elect, by a vote of the holders of a majority of the Membership Interests, to continue the business of the Company.  This Agreement shall continue to be binding upon all of the Members until such time as a new Operating Agreement is executed by the Members.

6.3     <u>Winding Up and Termination</u>.

(a)     Upon dissolution of the Company as provided in Section 6.1 and in the absence of the exercise of the option to continue the business of the Company as provided in Section 6.2, the affairs of the Company shall be wound up by the Manager and its assets liquidated in a manner deemed by the Manager most beneficial to the Company.  The Company shall terminate only after its affairs have been wound up and assets distributed in liquidation as herein provided.  Pending termination of the Company, this Agreement shall continue to govern the affairs of the Company and the Members shall continue to share net profits and net losses during the period of liquidation in the same proportions as before dissolution.

(b)     The proceeds, if any, from any liquidation of the assets of the Company shall be applied and distributed in the following order of priority:

-16-

(i)    to the payment of all liabilities owing to

creditors other than Members;

(ii)    to the establishment of such reserves as the

Manager may deem reasonably necessary to provide for contingent

or unforeseen liabilities or obligations of the Company;

(iii)    to the payment of all liabilities owing to

Members;

(iv)    to the Members in accordance with

Section 3.2(b).

(c)    No Member shall have any right to demand property other than

cash upon dissolution and termination of the Company.  If any assets of the Company are to be

distributed in kind, such assets shall be distributed on the basis of the fair market value thereof

and, if such assets be real property, any Member entitled to any interest in such property shall

receive his interest therein as a tenant-in-common with all other Members so entitled.

(d)    Within a reasonable time following completion of the liquidation

of the Company's properties, the regular accountants of the Company shall furnish to each

Member a statement (which need not be audited) setting forth the assets and liabilities of the

Company as of the date of complete liquidation.

(e)    Upon completion of the liquidation of the Company and the

distribution of all Company funds, the Company shall terminate.

-17-

## ARTICLE VII

### Books and Records and Accounting

7.1    Books and Records.  The Company shall maintain proper and complete records and books of account in which shall be entered all transactions relating to the Company's business.  Such books shall be kept on such method of accounting as the Manager shall determine.  All such books and records, subject to the following three sentences, shall be open to inspection, examination, and copying by a Member or his duly authorized representatives at his own expense on reasonable notice during regular business hours no more than once in any calendar year.  No member shall be entitled to inspect, examine or copy the books and records of the Company (other than those records which are specifically identified in Section 1102 of the New York Limited Liability Company Law) unless the Member demonstrates to the satisfaction of the Manager that such inspection and copying is just and reasonable.  In no event shall the Company disclose to a Member, unless otherwise required by law, any information which the Manager reasonably believes to be in the nature of trade secrets or other information the disclosure of which the Manager in good faith believes is not in the best interest of the Company or its business or which the Company is required by law or by agreement with a third party to keep confidential. A Member may not inspect, examine or copy any information contained in the books and records of the Company without first entering into an agreement satisfactory to the Manager assuring that such disclosed information will remain confidential and will not be used for any purpose adverse to the Company or the other Members or any of their interests.

7.2    Bank Accounts.  All funds of the Company shall be deposited in the name of the Company in such banking account or accounts as shall be designated by the Manager.  All withdrawals of Company funds from such banking account or accounts shall be made only for

-18-

Company purposes and upon the signature of such person or persons as may from time to time in writing be designated by the Manager.

7.3   Fiscal Year and Accountants.  The fiscal year of the Company shall be the calendar year unless the Manager shall otherwise determine.  The regular accountants of the Company shall be such independent firm of certified public accountants as the Manager may from time to time designate.

7.4   Accounting Decisions.  All decisions as to accounting principles, except as specifically provided to the contrary herein, shall be made by the Manager, as long as the decisions follow generally accepted accounting principles.

7.5   Federal Income Tax Elections.  All elections required or permitted to be made by the Company under the Internal Revenue Code shall be made by the Manager in its sole discretion.

## ARTICLE VIII

### Option

8.1   (a)  At such time as (i) neither Douglas Durst, Jonathan Durst nor any member of the Durst Family (as defined in Section 5.2(f)) is the Managing Trustee (as hereinafter defined) of the Rosenberg Trust or (ii) all or portion of the Rosenberg Trust's Membership Interest in the Company (the "Transferred Interest") is distributed or otherwise transferred to a person or entity other than a successor trust of which a member of the Durst Family is the Managing Trustee (the "Transferee"), the Company or its designee shall have the right at its option to purchase (A) if clause (i) of this subsection 8.1(a) is applicable, the Rosenberg Trust's Membership Interest in the Company from the Rosenberg Trust, or (B) if

-19-

clause (ii) of this subsection 8.1(a) is applicable, the Transferred Interest from the Rosenberg Trust or the Transferee, as the case may be, at the appraised fair market value of the Membership Interest or Transferred Interest, as the case may be, and on the terms as determined in accordance with the succeeding paragraph.  The Company (or its designee) shall have one year to exercise such option from the later to occur of the date it receives written notice from the Rosenberg Trust or a successor trust that an event specified in either clause (i) or (ii) of the subsection 8.1 (a) has occurred, or the date it sends written notification to the Rosenberg Trust or the Transferee, as the case may be, that it has learned that such an event has occurred.

(b)     The Manager shall appoint an appraiser knowledgeable in real estate matters to determine the fair market value of the Rosenberg Trust's Membership Interest or the Transferred Interest, as the case may be.  Within thirty days of his selection, the appraiser shall deliver to the Manager his appraisal setting forth such fair market value.  In making the appraisal, the appraiser shall take into account discounts for a minority interest and for lack of marketability.  The Rosenberg Trust or the Transferee shall be required to sell the Rosenberg Trust's Membership Interest or the Transferred Interest, as the case may be, at the appraised fair market value as so determined by such appraisal.  Such purchase price shall be paid in cash over such period of time (not to exceed five years from the date of the closing) as the Manager shall determine and with interest on the deferred balance at the appropriate Applicable Federal Rate as determined pursuant to Section 1274(d) of the Internal Revenue Code.  The closing shall occur not later than thirty days following the submission of the appraisal, such date to be selected by the Manager.

(c)     As used herein, the term Managing Trustee means a trustee having the powers and authority specified in paragraph (A)(2) of Section Ninth of the instrument dated April 1, 2003 establishing the Rosenberg Trust.

## ARTICLE IX

### Miscellaneous

9.1     General.  This Agreement:  (a) shall be binding upon, and shall inure to the benefit of, the parties hereto, their successors and permitted assigns; (b) shall be governed by and construed in accordance with, the laws of the State of New York; (c) contains the entire agreement between the parties and supersedes any prior understandings and agreements among them pertaining to the subject matter hereof; and (d) may be executed in several counterparts with the same effect as if the parties executing the several counterparts had all executed one counterpart as of the day and year first above written; provided that the several counterparts, in the aggregate, shall have been signed by all of the parties hereto.

9.2     Notices.  Any notice or other communication given pursuant to this Agreement shall be in writing and shall be deemed to have been duly given if personally delivered, upon delivery, or if mailed, upon deposit with the U.S. Postal Service by registered or certified mail, return receipt requested, addressed to each Member at the address of such Member shown on the books of the Company or to such changed address as to which any Member may give written notice to the others in accordance with the provisions hereof; provided, however, that a copy of any notice given by one Member to another Member shall concurrently therewith be given to the remaining Members.

SSL-DOCS1 791121v4

9.3    <u>Captions, Variation in Pronouns, and Severability</u>.  The headings in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation hereof.  Throughout this Agreement wherever from the context it appears appropriate, the masculine, feminine, or neuter gender shall be deemed to include all other genders, and the singular or the plural shall be deemed to include the singular and the plural.  If any provision of this Agreement shall be held invalid, the remainder of this Agreement shall not be affected thereby.

9.4    <u>Waiver and Amendment</u>.  No waiver, modification, or amendment of this Agreement shall be valid or effective unless in writing and signed by the Members then holding two-thirds (2/3rds) of the Membership Interests, and no waiver of any breach or condition of this Agreement shall be deemed to be a waiver of any other subsequent breach or condition, whether of like or different nature.

9.5    <u>Partition</u>.  Each Member hereby irrevocably waives any right that such Member may have to maintain any action for partition with respect to any property of the Company.

9.6    <u>Further Assurances</u>.  Each of the parties hereto agrees that he will make, execute and acknowledge such instruments, documents and certificates as from time to time may be required by law or may otherwise be necessary or convenient to effectuate the provisions of this Agreement and that if any action shall be taken pursuant to this Agreement by the required percentage of all or any of the Members or by the Manager when authorized hereunder, even though such party may not have assented thereto, or may have objected thereto, he will nevertheless execute any such writing or instrument as may be necessary to carry out and perfect

-22-

such action, including any instrument effecting or evidencing the admission or withdrawal of a Member and any amendment or supplement to this agreement.

9.7    Power of Attorney.  (a)  Each Member hereby irrevocably constitutes and appoints the Manager in his or her absolute discretion and with full power to act, his true and lawful attorney, in his name, place and stead, to make, execute, consent to, swear to, acknowledge, record and file:

(i)    any certificate or other instrument which may be required to be filed by the Company or the Members under the laws of the State of New York or under the applicable laws of any other jurisdiction to the extent that the Manager deems such filing to be necessary or desirable;

(ii)    any and all amendments or modifications of instruments described in the preceding subsection (a) (i); and

(iii)    all such other instruments as the Manager may deem necessary or desirable fully to carry out the provisions of this Agreement in accordance with its terms;

and each Member hereby irrevocably constitutes and appoints the Manager his true and lawful attorney, in his name, place and stead, to take any and all such other action as the Manager may deem necessary or desirable fully to carry out the provisions of this Agreement in accordance with its terms.

-23-

(b)    The foregoing Power of Attorney is coupled with an interest and shall continue in full force and effect notwithstanding the subsequent death or incapacity of any Member or the assignment by a Member of his or her Membership Interest.

In WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed as of the date first written above.

The Durst Organization Inc.

By: _____
Douglas Durst, President

_____
Douglas Durst, As Trustee
of Trusts described in
Exhibit A FBO Robert Durst, Wendy Durst
Kreeger, Thomas G. Durst, Douglas Durst,
Stephen M. Durst, Leslie B. Durst, Peter D.
Durst, Nan A. Rothschild, Peter A. Askin,
Laurel Ann Durst, Joshua Lowell Durst,
Robin Paula Durst and Jonathan Denis Durst

_____
Jonathan Durst, As Trustee
of Trusts described in
Exhibit A FBO Robert Durst, Wendy Durst
Kreeger, Thomas G. Durst,
Stephen M. Durst, Leslie B. Durst, Peter D.
Durst, Nan A. Rothschild, Peter A. Askin,
Laurel Ann Durst, Joshua Lowell Durst,
Robin Paula Durst and Jonathan Denis Durst

-24-

Richard Siegler, As Trustee
of Trusts described in
Exhibit A FBO Robert Durst, Wendy Durst
Kreeger, Thomas G. Durst, Douglas Durst,
Stephen M. Durst, Leslie B. Durst, Peter D.
Durst, Nan A. Rothschild, Peter A. Askin,
Laurel Ann Durst, Joshua Lowell Durst,
Robin Paula Durst and Jonathan Denis Durst


Trust created by David M. Durst,
as Grantor, dated 8/22/78 FBO
Kristoffer R. Durst

By: _____
     Douglas Durst, Trustee

By: _____
     Mark A. Levy, Trustee


The Gary & Denise Rosenberg
2003 Family Trust


By: _____
     Douglas Durst, Trustee


By: _____
     Denise Rosenberg, Trustee


By: _____
     Boris Rubenstein, Trustee


-25-

EXHIBIT A

| Member | I Initial Capital Contribution | Membership Interest |
|---|---|---|
| Trust created by Seymour B. Durst, as Grantor, dated 12/31/62 FBO Robert Durst | 685.00 | 6.891348 |
| Trust created by Seymour B. Durst, as Grantor, dated 12/31/62 FBO Wendy Durst Kreeger | 685.00 | 6.891348 |
| Trust created by Seymour B. Durst, as Grantor, dated 12/31/62 FBO Thomas G. Durst | 685.00 | 6.891348 |
| Trust created by Seymour B. Durst, as Grantor, dated 12/31/62 FBO Douglas Durst | 685.00 | 6.891348 |
| Trust created by Royal H. Durst, as Grantor, dated 12/31/62 FBO Stephen M. Durst | 685.00 | 6.891348 |
| Trust created by Royal H. Durst, as Grantor, dated 12/31/62 FBO Leslie B. Durst | 685.00 | 6.891348 |
| Trust created by Royal H. Durst, as Grantor, dated 12/31/62 FBO Peter D. Durst | 685.00 | 6.891348 |
| Trust created by Alma D. Askin, as Grantor, dated 12/31/62 FBO Nan A. Rothschild | 685.00 | 6.891348 |
| Trust created by Alma D. Askin, as Grantor, dated 12/31/62 FBO Peter D. Askin | 685.00 | 6.891348 |
| Trust created by David M. Durst, as Grantor, dated 12/31/62 FBO Laurel Ann Durst | 685.00 | 6.891348 |
| Trust created by David M. Durst, as Grantor, dated 12/31/62 FBO Joshua Lowell Durst | 685.00 | 6.891348 |
| Trust created by David M. Durst, as Grantor, dated 12/31/62 FBO Robin Paula Durst | 685.00 | 6.891348 |

EXHIBIT A

| Member | Initial Capital Contribution | Membership Interest |
|---|---|---|
| Trust created by David M. Durst, as Grantor, dated 12/31/62 FBO Jonathan Denis Durst | 685.00 | 6.891348 |
| Trust created by David M. Durst, as Grantor, dated 8/22/78 FBO Kristoffer R. Durst | 685.00 | 6.891348 |
| The Gary & Denise Rosenberg 2003 Family Trust | 350.00 | 3.521128 |
| | $9,940.00 | 100.000000% |

**COMPLAINT (attached at Exhibit A)**