UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT DURST,                                          :

                Plaintiff,       :

    -against-                                    :

RICHARD SIEGLER, JONATHAN DURST,      :
and DOUGLAS DURST, individually and as co-
trustees of the Robert Durst Trust u/a Dated      :
May 1, 1962 and the Robert Durst Trust u/a Dated
December 31, 1962,                                    :

             Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REDACTED BRIEF – ORIGINAL FILED UNDER SEAL

Civil Action No.
04 CV 06981 (RMB)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
OR, IN THE ALTERNATIVE, FOR ABSTENTION**

STROOCK & STROOCK & LAVAN LLP
*Attorneys for Defendants Richard Siegler
  and Douglas Durst*
180 Maiden Lane
New York, New York 10038
(212) 806-5400

PATTERSON BELKNAP WEBB & TYLER LLP
*Attorneys for Defendant Jonathan Durst*
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................i

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS .............................................................................2

    A.    Robert Durst's Complaint..............................................................2

    B.    The Parallel Surrogate's Court Proceedings................................3

    C.    Robert Durst Is a Citizen of New York .......................................4

        1.    Robert Durst's Domicile of Origin Is New York .................4

        2.    Robert Durst's **[REDACTED]** ........................................5

        3.    Robert Durst Never Established a New Domicile in Texas
            Between 1998 and His Arrest and Incarceration in
            November 2001 ..................................................................7

            (a)    Robert Durst's **[REDACTED]** .................................7

            (b)    Robert Durst's **[REDACTED]** .................................8

            (c)    Robert Durst's **[REDACTED]** ...............................10

ARGUMENT......................................................................................18

POINT I    THIS ACTION SHOULD BE DISMISSED FOR LACK OF
           SUBJECT MATTER JURISDICTION................................18

    A.    Robert Durst Cannot Prove That He Gave Up His New York
        Domicile and Acquired a New Domicile in Texas by Clean and
        Convincing Evidence.............................................................18

    B.    The Only Evidence Pointing to Texas Is Not Sufficient .........23

        1.    Use of **[REDACTED]**.............................................23

        2.    Robert Durst's **[REDACTED]** ..................................24

        3.    Draft Legal Documents .................................................25

POINT II    SUPPLEMENTAL JURISDICTION DOES NOT EXIST ...................25

POINT III  THE COURT SHOULD ABSTAIN FROM DECIDING
PLAINTIFF'S CLAIMS IN FAVOR OF ADJUDICATION IN
THE SURROGATE'S COURT ................................................................26

  A.  Colorado River Abstention ...............................................................26

    1.  Piecemeal Litigation ................................................................26

    2.  State Law Issues ......................................................................27

  B.  Wilton Abstention..............................................................................29

  C.  Burford Abstention ............................................................................30

CONCLUSION ...................................................................................................31

# TABLE OF AUTHORITIES

## CASES

29/35 Realty Associate v. 35th Street New York Yarn Ctr.,
    181 A.D.2d 540 (1st Dep't 1992)...................................................................14, 15

Amies v. Wesnofske,
    255 N.Y. 156 (1931)..............................................................................................14

Canstar v. J.A. Jones Construction Co.,
    212 A.D.2d 452 (1st Dep't 1995)...........................................................................12

Chatterjee Fund Management, L.P. v. Dimensional Media Associate,
    260 A.D.2d 159 (1st Dep't 1999).............................................................................6

Conopco Inc. v. Wathne Limited,
    190 A.D.2d 587 (1st Dep't 1993).............................................................................7

Fesseha v. TD Waterhouse Investment Srvs., Inc.,
    305 A.D.2d 268 (1st Dep't 2003)...........................................................................12

Four Seasons Hotels, Ltd. v. Vinnik,
    127 A.D.2d 310 (1st Dep't 1987).............................................................................7

The Hawthorne Group, LLC v. RRE Ventures,
    7 A.D.3d 320, 323 (1st Dep't 2004)......................................................................12

Hollinger Digital, Inc. v. LookSmart, Ltd.,
    267 A.D.2d 77 (1st Dep't 1999)...........................................................................6, 9

International Merchandise Group Americas, Inc. v. Segerman International, Inc.,
    277 A.D.2d 168 (1st Dep't 2000)...........................................................................18

Kalimian v. MTM Associate,
    280 A.D.2d 275 (1st Dep't 2001).............................................................................6

Keis Distributing v. N. Distributing Co.,
    226 A.D.2d 967 (3d Dep't 1996) .............................................................................8

Kochiam International, Inc. v. Communication Controls Systems of New York,
    243 A.D.2d 284 (1st Dep't 1997).............................................................................7

LaRuffa v. Fleet Bank, N.A.,
    260 A.D.2d 299 (1st Dep't 1999).............................................................................6

Lederer v. King,
    214 A.D.2d 354 (1st Dep't 1995)........................................................................14, 15

Lost Creek Associate, LLC v. Marine Midland Bank,
    293 A.D.2d 719 (2d Dep't 2002) ..................................................................6

Metropolitan Steel Industrial, Inc. v. Citnalta Construction Corp.,
    302 A.D.2d 233 (1st Dep't 2003)..................................................................9

Morris v. N.Y. State Department of Taxation and Finance,
    82 N.Y.2d 135 (1993)..................................................................................16

National Union Fire Insurance Co. of Pittsburgh v. Xerox Corp.,
    No. 603360/03, 2004 WL 2715603 (Sup. Ct. N.Y. Co. 2004)..........................12

Scheck v. Francis,
    26 N.Y.2d 466 (1970)................................................................................6, 9

Shilkoff, Inc. v. 885 Third Avenue Corp.,
    299 A.D.2d 253 (1st Dep't 2002)................................................................12

Taj International Corp. v. Edward G. Bashian & Sons, Inc.,
    251 A.D.2d 98 (1st Dep't 1998)....................................................................7

Wallace v. 600 Partners Co.,
    205 A.D.2d 202 (1st Dep't 1994)................................................................10

Wright v. Wright,
    226 N.Y. 578 (1919)..................................................................................18

## OTHER AUTHORITIES

13 Williston On Contracts § 39:9 (4th ed.) ..................................................14

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................i

PRELIMINARY STATEMENT .........................................................................1

STATEMENT OF FACTS ..................................................................................2

    A.    Robert Durst's Complaint.....................................................................2

    B.    The Parallel Surrogate's Court Proceedings.........................................3

    C.    Robert Durst Is a Citizen of New York ...............................................4

        1.    Robert Durst's Domicile of Origin Is New York .......................4

        2.    Robert Durst's **[REDACTED]** ...............................................5

        3.    Robert Durst Never Established a New Domicile in Texas
            Between 1998 and His Arrest and Incarceration in
            November 2001 ...........................................................................7

            (a)    Robert Durst's **[REDACTED]** .....................................7

            (b)    Robert Durst's **[REDACTED]** .....................................8

            (c)    Robert Durst's **[REDACTED]** ...................................10

ARGUMENT........................................................................................................18

POINT I      THIS ACTION SHOULD BE DISMISSED FOR LACK OF
              SUBJECT MATTER JURISDICTION...................................................18

    A.    Robert Durst Cannot Prove That He Gave Up His New York
        Domicile and Acquired a New Domicile in Texas by Clean and
        Convincing Evidence............................................................................18

    B.    The Only Evidence Pointing to Texas Is Not Sufficient .....................23

        1.    Use of **[REDACTED]**................................................................23

        2.    Robert Durst's **[REDACTED]** .................................................24

        3.    Draft Legal Documents ................................................................25

POINT II     SUPPLEMENTAL JURISDICTION DOES NOT EXIST ...................25

POINT III    THE COURT SHOULD ABSTAIN FROM DECIDING
             PLAINTIFF'S CLAIMS IN FAVOR OF ADJUDICATION IN
             THE SURROGATE'S COURT ................................................................26

    A.    Colorado River Abstention ....................................................................26

          1.    Piecemeal Litigation ...................................................................26

          2.    State Law Issues .........................................................................27

    B.    Wilton Abstention.....................................................................................29

    C.    Burford Abstention ...................................................................................30

CONCLUSION ....................................................................................................................31

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR ABSTENTION

Defendants Richard Siegler and Douglas Durst, by their counsel, Stroock & Stroock & Lavan LLP, and Jonathan Durst, by his counsel Patterson, Belknap, Webb & Tyler LLP (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiff Robert Durst ("Durst" or "Robert Durst"), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, to abstain from hearing this action in favor of parallel state proceedings in the New York State Surrogate's Court.

### PRELIMINARY STATEMENT

This action should be dismissed for lack of subject matter jurisdiction because diversity of citizenship does not exist.  As of the commencement of this action on August 30, 2004, each of the Defendants was a citizen of New York, and Robert Durst was a citizen of New York incarcerated at the time in Galveston, Texas.  Although Robert Durst will claim that **[REDACTED]**, evidence adduced in discovery shows that he never established an actual domicile in Texas and that at all relevant times he retained far more contacts with New York than with Texas. Indeed, he has admitted **[REDACTED]**.  Based on the record before the Court, Robert Durst cannot meet his heavy burden of proving by clear and convincing evidence that he ever gave up his New York domicile to become a citizen of Texas.

Nor does Robert Durst have any basis for his assertion that supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367(a).  The Complaint alleges purely state law claims over which a district court cannot exercise supplemental jurisdiction unless a proper basis

for original federal jurisdiction exists. None exists here. Absent an independent basis for federal jurisdiction, the Court cannot exercise supplemental jurisdiction over Durst's claims.

Alternatively, even if this Court were to determine that subject matter jurisdiction exists, it should decline to exercise jurisdiction in deference to the accounting proceedings currently pending before the New York State Surrogate's Court. The Complaint attacks Defendants' conduct as trustees under certain New York *inter vivos* trusts. The parties are in the midst of extensive discovery in the Surrogate's Court, and depositions of all the parties as well as additional key witnesses are scheduled to be completed before this motion is even ripe for resolution. The Surrogate's Court has the express authority and expertise to determine questions of trust administration and trustee liability. Most significantly, the accounting proceedings allow all Durst family members to be heard or represented by those who may be heard, and will resolve the issues of trustee liability not only as to Robert Durst, but as to all persons who are potential beneficiaries of the trusts at issue. In the exercise of their considerable discretion, federal courts regularly abstain in matters that, like this case, fall squarely within the Surrogate's Court's jurisdiction. The Court should therefore abstain from adjudicating this dispute in favor of the Surrogate's Court accountings.

## STATEMENT OF FACTS

**A.    Robert Durst's Complaint**

Robert Durst is the beneficiary of two trusts created by his father, Seymour B. Durst, on May 1, 1962 ("May 1962 Trust") and December 31, 1962 ("December 1962 Trust") (together, the "Trusts"). Defendants are trustees of the Trusts (the "Trustees") and are sued both

individually and in their capacity as trustees.  Durst alleges that Defendants wrongfully restricted and/or conditioned his testamentary power of appointment of certain trust property to his wife. See Complaint ("Compl.") ¶¶ 2, 41, 43, 58 (Exhibit A to the accompanying Declaration of Charles G. Moerdler dated April 29, 2005) ("Moerdler Dec").[1]  The Complaint purports to state six claims for relief for: (1) a declaratory judgment that Defendants' actions are void under Section 7-2.4 of New York's Estate Powers & Trust Law; (2) a declaratory judgment that Defendants' actions are voidable by Durst; (3) breach of the trust agreements; (4) breach of fiduciary duty; (5) breach of duty of good faith and fair dealing; and (6) unjust enrichment.  In addition to declaratory relief, Robert Durst seeks an accounting of the Trusts, removal of the Trustees and appointment of successors, and unspecified compensatory and punitive damages and fees.  Id. at pp. 35-36.

**B.      The Parallel Surrogate's Court Proceedings**

On November 16, 2004, the Trustees filed an accounting proceeding in the Surrogate's Court with respect to Durst's May 1962 Trust (the "May Trust Accounting")  (Ex. B).  On January 21, 2005, the Trustees filed a parallel proceeding with respect to the December 1962 Trust (the "December Trust Accounting" (Ex. C), and together with the May Trust Accounting, the "Surrogate's Court Proceedings").  On January 27, 2005, the Court appointed Robert Damast as Durst's Guardian *Ad Litem* in the Surrogate's Court Proceedings (Ex. D).

The Surrogate's Court Proceedings seek to settle the accounts of the Trusts and to discharge the Trustees of any and all liability with respect to their administration of the Trusts. Unlike the instant action, which challenges the propriety of the Trustees' conduct solely as it relates to Robert Durst, the Surrogate's Court Proceedings name as parties Robert Durst and all

---

[1]   References "Ex. _" are to the indicated exhibits to the Moerdler Dec.

twelve of the remaining grandchildren of Seymour B. Durst's father, Joseph Durst, who are each contingent beneficiaries under the Trusts.   Because the Surrogate's Court Proceedings will provide a broader and more comprehensive adjudication of these issues, abstention is warranted.

Furthermore, extensive discovery has already begun in the Surrogate's Court Proceedings.  On January 12, 2005, Surrogate Anthony A. Scarpino, Jr. issued a Discovery Order in the May Trust Accounting (as amended by the Court on March 15, 2005 in both the May and December Trust Accountings), providing for written discovery to be completed by April 8, 2005, and ten depositions of the key witnesses are to be completed by June 10, 2005 (Ex. E).  To date, the Trustees have produced approximately 50,000 pages of documents.   Depositions are scheduled to begin in May 2005 (Ex. E).

## C.   Robert Durst Is a Citizen of New York

Robert Durst bases federal subject matter jurisdiction in this action upon diversity of citizenship pursuant to 28 U.S.C. § 1332.  Compl. ¶ 9.  The Complaint, however, only alleges diversity of residence, not diversity of citizenship.  See id. ¶ 5 ("Robert Durst is a resident of the State of Texas"), ¶¶ 6-8 (each of the Defendants is "an individual who resides in the State of New York").   Notwithstanding Robert Durst's patently defective jurisdictional allegations, Defendants acknowledge that they are citizens of New York.  Since Durst is also a citizen of New York, diversity of citizenship does not exist.

### 1.   Robert Durst's Domicile of Origin Is New York
### [REDACTED]

2.   <u>**Robert Durst's [REDACTED]**</u>

From **[REDACTED]** until his arrest in November 2001, Robert Durst continuously maintained and regularly lived **[REDACTED]**.  Thus, the evidence shows:

**[REDACTED]**

**[REDACTED]**

**[REDACTED]**

3.   **Robert Durst Never Established a New
     Domicile in Texas Between 1998 and His
     <u>Arrest and Incarceration in November 2001</u>**

**[REDACTED]**

This peripatetic odyssey ended only upon his arrest.

(a)   **Robert Durst's [REDACTED]**

Beginning in **[REDACTED]**

**[REDACTED]**

**(b)**     **Robert Durst's [REDACTED]**

Robert Durst's allegation that he adopted Texas as his domicile in 1998 is also

belied by **[REDACTED]**.  According to Durst's deposition testimony:

**[REDACTED]**

**[REDACTED]**

Yet even these admissions exaggerate the amount of time Robert Durst spent in Texas.  The Calendar and Timetable accompanying this brief show that **[REDACTED]**,[2] always returning to spend a significant amount of time in New York.  In fact, from **[REDACTED]**. Charatan **[REDACTED]**   Durst estimated that from the Fall of 2000 through his arrest in November 2001, he was **[REDACTED]**

While the Calendar and Timetable prove that this is a gross understatement, the admission is significant: Robert Durst <u>always</u> returned to his domicile in New York.

**[REDACTED]**

---

[2]   The Calendar and Timetable in the Appendix ("App.") chart Robert Durst's whereabouts from April 1998 through his initial arrest in Galveston in October 2001.  Durst's travels during this period are difficult to trace, and minor discrepancies have understandably occurred.  The Calendar and Timetable still demonstrate that **[REDACTED]**.  The documents from which the information in the Calendar and Timetable was derived are referenced in the Timetable and consist of **[REDACTED]**.  These materials are collected as Exs. L, M and N to the Moerdler Dec., respectively.

(c)     **Robert Durst's [REDACTED]**

Robert Durst's **[REDACTED]** further demonstrate that he never relocated to Texas with the intent to remain there indefinitely.

**[REDACTED]**

-10-

**[REDACTED]**

**[REDACTED]**

**[REDACTED]**

**[REDACTED]**

**[REDACTED]**

**[REDACTED]**

On or about October 9, 2001, Robert Durst was arrested in Galveston for the murder of Morris Black.

**[REDACTED]**

**[REDACTED]**

As of the commencement of this action on August 30, 2004, Robert Durst was incarcerated in the Galveston County Jail in Texas.  He is currently incarcerated at the Federal Correctional Institution in Fairton, New Jersey, based on his guilty plea to federal gun charges. In August 2005, he will be returned to Texas for mandatory supervised release and must remain there until November 29, 2006, stemming from his guilty plea to bail-jumping and evidence tampering charges (RD 6937; **[REDACTED]**).

**[REDACTED]**

## ARGUMENT

### POINT I

### THIS ACTION SHOULD BE DISMISSED
### FOR LACK OF SUBJECT MATTER JURISDICTION

The "threshold" issue of subject matter jurisdiction must be determined before the merits can be addressed. Gutierrez v. Fox, 141 F. 3d 425, 426 (2d Cir. 1998). In this case, diversity of citizenship pursuant to 28 U.S.C. § 1332 is the only potential source of jurisdiction. Diversity jurisdiction is available only when "all adverse parties to a litigation are completely diverse in their citizenships." Herrick Co. v. SCS Communications, Inc., 251 F.3d 315, 322 (2d Cir. 2001). As the party seeking to invoke jurisdiction, Robert Durst "must allege a proper basis for jurisdiction in his pleadings and must support those allegations with 'competent proof' if a party opposing jurisdiction properly challenges those allegations." Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998).

**A.    Robert Durst Cannot Prove That He Gave Up
His New York Domicile and Acquired a New
Domicile in Texas by Clear and Convincing Evidence**

We note at the outset that the Complaint's allegations of diversity of "residence" are patently inadequate. See, e.g., Franceskin v. Credit Suisse, 214 F.3d 253, 255-56 (2d Cir. 2000). Domicile determines a person's citizenship, not residence. See, e.g., Palazzo v. Corio, 232 F.3d 38, 42 (2d Cir. 2000). Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Linardos, 157 F.3d at 948. While a party may have more than one residence, he may only have one domicile at any one time. See, e.g., Greenblatt v. Gluck, 265 F. Supp.2d 346, 351 (S.D.N.Y. 2003).

Robert Durst was incarcerated when this action was commenced on August 30, 2004. Although diversity is typically determined at the time of commencement, prisoners are generally presumed to retain the domicile they had at the time of incarceration for diversity purposes. See, e.g., Scott v. Sonnet, Sale & Kuehne, P.A., 989 F. Supp. 542, 543 (S.D.N.Y. 1998). Thus, Durst's domicile is determined as of November 30, 2001, the date of his arrest and incarceration.

Robert Durst's life-long domicile in New York is "presumed to continue" until it is superseded by a new domicile. Gutierrez, 141 F.3d at 427; see also Palazzo, 232 F.3d at 42 ("Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change"). Absent proof that Durst ever acquired a new domicile in Texas, there is no diversity jurisdiction in this case. See, e.g., Gutierrez, 141 F.3d at 428 ("There must be animus to change the prior domicile from another. Until the new one is acquired, the old one remains"); Willis v. Westin Hotel Co., 651 F. Supp. 598, 603 (S.D.N.Y. 1986) ("A person may not lose state citizenship without first acquiring a new domicile").

As the party alleging the change of domicile upon which diversity depends, Robert Durst must prove change of domicile by clear and convincing evidence. See, e.g., Gutierrez, 141 F.3d at 427-28. To satisfy this heavy burden, two things are indispensable:

> First, residence in a new domicile; and, second, the intention to remain there. The change cannot be made except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change.

Id. at 428 (quoting Sun Printing & Publishing Ass'n v. Edwards, 194 U.S. 377, 383 (1904)). The second element "does not require that the person have an affirmative intent to remain permanently in the state, merely that she has no present intent to move to another state." Nat'l Artists Mgmt. Co. v. Weaving, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991). Thus, Durst must

-19-

prove the "required <u>intent to give up the old and take up the new domicile, coupled with the acquisition of a residence in the new locality, and must prove those facts by clear and convincing evidence.</u>" <u>Palazzo</u>, 232 F.3d at 42 (internal quotation marks omitted) (emphasis added).  Durst cannot make that required showing here.  In ascertaining intent, the party's "entire course of conduct may be taken into account." <u>Nat'l Artists</u>, 769 F. Supp. at 1227.  Courts use a "totality of the evidence" approach, and "no single factor is conclusive." <u>Id</u>. at 1228.  Moreover, because parties often manufacture allegations of intent to avoid dismissal, they are entitled to "slight weight" when contradicted by objective evidence showing a contrary intent. <u>Nat'l Artists</u>, 769 F. Supp. at 1227-28.

Despite his contrived, after-the-fact efforts to create the impression of a Texas domicile, Robert Durst nevertheless admitted that **[REDACTED]**.  Durst's original domicile is New York, and and little difference exists between Texas and any of the various other states in his travels.  Indeed, Durst's partisan, retrospective allegation that he **[REDACTED]** is belied by overwhelming evidence that:

- **<u>Robert Durst's transient lifestyle precludes any finding that he resided in Texas with the intent to remain there indefinitely.</u>**  For a person's domicile to change, he must relocate to a new state and intend to remain there indefinitely. <u>Linardos</u>, 157 F.3d at 948.  As the Calendar and Timetable shows, Durst **[REDACTED]**  A person "may not lose his state citizenship without first acquiring some new domicile." <u>Willis</u>, 651 F. Supp. At 603.  New York remains Durst's domicile.

- **<u>Robert Durst always returned to his original domicile – New York.</u>**  Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." <u>Palazzo</u>, 232 F.3d at 42.  Moreover, mere absence from the established domicile, however long, cannot change the domicile. <u>See Gutierrez</u>, 141 F.3d at 428.  Durst admitted that **[REDACTED]**  As the Timetable indicates, Durst was **[REDACTED]**  Moreover, **[REDACTED]**

-20-

- **<u>Robert Durst's primary residence</u>** [REDACTED]

- **<u>Robert Durst used other residences</u>** [REDACTED]

- **<u>Robert Durst's apartment in</u>** [REDACTED]

- **<u>Robert Durst's apartment in</u>** [REDACTED]

- **<u>Robert Durst</u>** [REDACTED]

**[REDACTED]**

- **As of November 30, 2001, Robert Durst** [REDACTED]  To be domiciled in a particular state, a party must maintain a physical presence in the state.  See, e.g., Francke v. Martin, No. 93 Civ. 1348, 1994 WL 132293, at *3 (S.D.N.Y. April 14, 1994).  Durst **[REDACTED]**. When this action was filed, his only "residence" in Texas was Galveston County Jail.

- **Robert Durst's wife** [REDACTED]

- **Robert Durst's "business"** [REDACTED]

- **Robert Durst's accountant** [REDACTED]


**[REDACTED]**

- **The majority of Robert Durst's physicians [REDACTED]**

- **Robert Durst used attorneys [REDACTED]**

Given the above facts, Robert Durst simply cannot meet his burden to prove by clear and convincing evidence that he ever changed his domicile to Texas. Durst's domicile is unquestionably New York.

**D.    The Only Evidence Pointing to Texas Is Not Sufficient**

Even those few facts that would otherwise point to a Texas domicile fail to do so here:

**1.    Use of [REDACTED].**

Robert Durst will rely on the fact that he **[REDACTED]**. This fact is immaterial. Durst **[REDACTED]**.

**[REDACTED]**

[REDACTED]

2. **Robert Durst's [REDACTED].**

   Robert Durst will also point to the fact that **[REDACTED]**

**[REDACTED]**

3.     **Draft Legal Documents.**

Finally, Robert Durst's counsel has previously argued that a letter written by an attorney from one of the firms representing Defendants after he was incarcerated in Texas is an "admission" that he is a Texas domiciliary (RD 4757-58).  This argument fails because "no action of the parties can confer subject-matter jurisdiction upon a federal court." Franzel v. Kerr Manuf. Co., 959 F.2d 628, 629 (6th Cir. 1992) (quoting Ins. Corp. of Ireland v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 702 (1982)).  Moreover, "[a] federal court's lack of subject matter jurisdiction is not waivable by the parties, and we must address jurisdictional questions before reaching the merits." Leveraged Leasing Administration Corp. v. Pacificorp Capital, Inc., 87 F.3d 44, 47 (2d Cir. 1996); see also Long Island Radio Co. v. Nat'l Labor Relations Bd., 841 F.2d 474, 478 (2d Cir. 1988) (principles of estoppel do not apply to subject matter jurisdiction). In short, a lawyer's letter that does no more than recite Durst's own assertion that he is a Texas domiciliary is of no more probative value than Durst's other self-serving claims of a Texas domicile.  This argument cannot save this action from dismissal for lack of diversity jurisdiction.

**POINT II**

**SUPPLEMENTAL JURISDICTION DOES NOT EXIST**

The Complaint also alleges that "jurisdiction over Plaintiff's claims is within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a)."  Compl. ¶ 10.  This contention is meritless.  The Complaint solely alleges state law claims.  See supra at 3.  It is well settled that a district court "cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction." Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996).  Here, the Federal Declaratory Judgment Act does not provide an independent basis for federal jurisdiction.  See, e.g., Concerned Citizens of Cohocton Valley, Inc. v. New York State Dep't of Envtl. Conservation, 127 F.3d 201, 206 (2d Cir. 1997).

Therefore, because diversity jurisdiction does not exist, supplemental jurisdiction over the Complaint's state law claims is not available. See Herrick, 251 F.3d at 325-26 (supplemental jurisdiction is not permitted over non-diverse parties over which there is no independent subject matter jurisdiction).

## POINT III

### THE COURT SHOULD ABSTAIN FROM DECIDING PLAINTIFF'S CLAIMS IN FAVOR OF ADJUDICATION IN THE SURROGATE'S COURT

Even if this Court determines that it has jurisdiction, it should decline to exercise it in favor of the Surrogate's Court Proceedings. The Surrogate's Court Proceedings are well underway – the Trustees have produced thousands of documents, depositions are scheduled to begin shortly, and a guardian *ad litem* has been appointed. Three recognized abstention doctrines apply here, and all dictate the same result: this Court should abstain from hearing this case favor of the Surrogate's Court Proceedings.

**A.    Colorado River Abstention**

Abstention is warranted in this case in accordance with the principles articulated by the Supreme Court in Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800 (1976):

**1.    Piecemeal Litigation.**

Abstention would avoid multiple proceedings, duplicative and burdensome parallel discovery, and the possibility of inconsistent results. The Surrogate's Court Proceedings encompass all of the issues and the parties currently before this Court. See Machat v. Sklar, No. 96 Civ. 3796, 1997 WL 599384, *7 (S.D.N.Y. Sept. 29, 1997) (abstention in favor of state probate proceeding appropriate where "*substantially* the same parties are contemporaneously litigating *substantially* the same issues in another forum") (emphasis in original) (citation omitted). In addition, the Surrogate's Court Proceedings collectively name over fifty interested

parties, including all of the contingent beneficiaries of the Trusts. Every affected Durst family member therefore has an opportunity to appear in the Surrogate's Court Proceedings as a party or is represented in those proceedings by someone with such an opportunity (see Exs. B-C). By contrast, if this action is allowed to proceed in this Court, it may result in multiple similar proceedings with the possibility of inconsistent determinations.

These circumstances weigh heavily in favor of abstention. See Arkwright-Boston Manufacturers Mutual Insurance Co. v. City of New York, 762 F.2d 205, 211 (2d Cir. 1985) ("[a]s in Colorado River, the danger of piecemeal litigation is the paramount consideration in this case...Maintaining virtually identical suits in two forums... would waste judicial resources and invite duplicative effort...[T]he avoidance of piecemeal litigation is best served by leaving these suits in the state court"); De Cisneros v. Younger, 871 F.2d 305, 308 (2d Cir. 1989) (avoidance of "duplicative and simultaneous litigation" supports abstention, noting that "value of judicial economy . . . animates Colorado River"); Bull & Bear Group, Inc. v. Fuller, 786 F. Supp. 388, 394 (S.D.N.Y. 1992) (applying Colorado River abstention where two related actions ongoing in New York Supreme Court, noting "the existence of parallel actions posing the threat of inconsistent results").

### 2. State Law Issues.

This case solely involves issues of New York State law that are within the unique expertise of the Surrogate's Court. Courts in this district regularly point to the special expertise of the Surrogate's Court in interpreting state law relating to trusts and estates as a key factor favoring abstention under Colorado River. See Lawrence v. Cohn, 932 F. Supp. 564, 579 (S.D.N.Y. 1996) (noting need to avoid "needlessly interfer[ing] with the state's administration of its own affairs in an area where the Surrogate's Court has particular expertise."); In re Application of Adolf Horler, 799 F. Supp. 1457, 1466 (S.D.N.Y. 1992) ("[O]ur decision to

-27-

abstain on <u>Colorado River</u> grounds is influenced, in part, by the special expertise of the Surrogate's Court in matters related to the probate and administration of wills"). Indeed, the Complaint implicitly recognizes that the issues raised fall squarely within the Surrogate's Court's unique qualification to hear this dispute by invoking the provisions of the Surrogate's Court Procedure Act (the "SCPA"), the state law which sets out the procedural rules for the Surrogate's Court itself. Compl. at p. 36, ¶ 3(d).

The relief sought herein is also particularly suited to the Surrogate's Court jurisdiction. The Complaint seeks, <u>inter alia</u>, an accounting, a remedy with which the Surrogate's Court is exceptionally familiar. <u>See, e.g.</u>, <u>Flather v. United States Trust Co. of New York</u>, No. 93 Civ. 7504, 1994 WL 376088 at *5, n. 1 (S.D.N.Y. July 15, 1994) (recognizing "the special expertise of the Surrogate's Court in conducting accounting proceedings"); NY EPTL § 7-2.7, NY SCPA Art. 22. More importantly, the Surrogate's Court Proceedings have already provided the accountings that Robert Durst requests, together with nearly 50,000 pages of documents and a long list of pending depositions. In addition, Durst seeks the removal of the Trustees and appointment of new trustees, remedies governed by the New York Estates, Powers and Trusts Law and the SCPA. <u>See, e.g.</u>, NY EPTL § 7-2.6, NY SCPA § 711.

Finally, the other <u>Colorado River</u> factors do not weigh against abstention and are, at most, neutral. Thus, the Southern District is no more convenient a forum than the Surrogate's Court, this action was commenced only shortly before the filing of the Surrogate's Court proceedings (in which discovery has now reached an advanced stage), and there is no reason to believe that Durst's rights will not be adequately protected in the Surrogate's Court. Accordingly, abstention under <u>Colorado River</u> is entirely justified in this case.

**B.**    <u>**Wilton Abstention**</u>

Abstention is particularly appropriate in light of Robert Durst's request for declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. ("DJA"). In <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277 (1995), the Supreme Court recognized the broad discretion to decline to exercise jurisdiction over claims brought pursuant to the DJA, holding that federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." <u>Wilton</u>, 515 U.S. at 286; <u>see also</u> <u>Farrell Lines Inc. v. Ceres Terminals, Inc.</u>, 161 F.3d 115, 117 (2d Cir. 1998) (reaffirming the "unique breadth of . . . discretion to decline to enter a declaratory judgment").

Here, the Complaint's first and second causes of action seek declarations pursuant to the DJA, and all of Durst's non-declaratory claims arise from the very same facts underlying the claims for declaratory relief. Thus, while there is Second Circuit precedent suggesting that <u>Wilton</u> may not support abstention because the Complaint does not seek "purely declarative relief," this case is distinguishable. <u>Village of Westfield v. Welch's</u>, 170 F.3d 116, 125 n. 5 (2d Cir. 1999). The <u>Wilton</u> rationale for abstention remains compelling because all of the claims in the Complaint derive from those seeking declaratory relief. <u>See</u> <u>General Star v. Chase</u>, No. 01 Civ. 11379, 2002 WL 850012, at *5 (S.D.N.Y. May 3, 2002) ("[The Court] is entitled to exercise a greater level of discretion by virtue of the fact that virtually all claims stem from the underlying request for declaratory relief").

Indeed, courts frequently abstain in matters involving trusts and wills, which "have traditionally been considered matters of important state interest . . . [that] fit squarely within the scope of authority and jurisdiction traditionally exercised by the Surrogate's Court." <u>Hodge v. Skiff</u>, 78 F. Supp. 2d 29, 32-33 (N.D.N.Y. 1999) (abstaining from issuing declaratory judgment relating to intra-family dispute over the validity of will); <u>see also</u> <u>In the Matter of The</u>

Thomas and Agnes Carvel Foundation, 36 F. Supp. 2d 144 (S.D.N.Y. 1999) (abstaining from determining enforceability of will and entitlement to property covered by inter vivos trust); Goodman v. Goodman, 206 F. Supp. 2d 428 (W.D.N.Y. 2002) (abstaining from issuing declaratory judgment relating to disposition of bank account jointly held by decedent and decedent's grandson, noting "the legal questions here are not federal in nature . . . and [the Surrogate's Court] can exercise jurisdiction over the defendants named here"). These same principles apply here and mandate the same conclusion: the issues raised in this case should be determined by the Surrogate's Court.

**C.    Burford Abstention**

Finally, Burford v. Sun Oil Co., 319 U.S. 315 (1943), also supports abstention. The purpose of Burford abstention is to "avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration." Bethpage Lutheran Service, Inc. v. Weicker, 965 F.2d 1239, 1243 (2d Cir. 1992). New York State has a particular interest in the area of trust and estate matters, which is heavily regulated, and to which the state has devoted a specialized judicial forum – the Surrogate's Court. Application of the particular state law issues implicated here are best dealt with by that forum. See, e.g., Lawrence v. Cohn, 778 F. Supp 678, 685 (S.D.N.Y. 1991) (abstention on Burford and Colorado River grounds warranted because "[t]he area of probate and decedents' estates presents many varied problems. State courts deal with these problems daily and have developed an expertise which should discourage federal court intervention. These local problems should be dealt with by state courts"); see also Farkas v. D'Oca, 857 F. Supp. 300, 304 (S.D.N.Y. 1994) (abstention under Burford warranted where court would be required to determine the disposition of marital property, noting that marital issues are the subject of extensive state regulation).

-30-

## CONCLUSION

For all the reasons stated herein, this action should be dismissed for lack of subject matter jurisdiction or, in the alternative, the Court should abstain from hearing this action in favor of parallel state proceedings in New York State Surrogate's Court.

Dated: New York, New York
April 29, 2005

STROOCK & STROOCK & LAVAN LLP

By: /s/ Charles G. Moerdler
    Charles G. Moerdler (CM-3863)
    Curtis C. Mechling (CM-5957)
180 Maiden Lane
New York, New York  10038-4982
(212) 806-5400

*Attorneys for Defendants Richard Siegler and Douglas Durst*

PATTERSON, BELKNAP, WEBB & TYLER LLP

By: /s/ Saul B. Shapiro
    Saul B. Shapiro (SS-5506)
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2222

*Attorneys for Defendant Jonathan Durst*

-31-

**APPENDIX**

**CALENDAR AND TIMETABLE**

**REDACTED – ORIGINAL FILED UNDER SEAL**